## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:20-cv-00396-MN |
| PROJECT PANTHER US, LLC, | ) ) ) | |
| Defendant. | ) | |

## OPENING BRIEF IN SUPPORT OF PROJECT PANTHER US, LLC'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
kdorsney@morrisjames.com


OF COUNSEL:

Jeffrey L. Snow
Brad D. Rose
Joseph V. Micali
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Tel: (212) 421-4100

*Attorneys for Project Panther US, LLC*

Dated: June 17, 2020

## <u>TABLE OF CONTENTS</u>

I. Introduction ........................................................................................................................ 1

   A.  Statement of Facts ........................................................................................................ 1

   B.  The '221 Patent .............................................................................................................. 1

   C.  Summary of the Argument ........................................................................................... 4

II.  Argument ......................................................................................................................... 5

   A.  Legal Standards ............................................................................................................ 5

   B.  The '221 Patent Claims Are Invalid Under § 101 as a Matter of Law .............................. 8

      1.  *Alice* Step One: The '221 Patent Claims Are Directed to the Abstract Idea of
      Requesting to Receive or Store Media Content ............................................................ 8

         a.  The Claims Recite Functional Language and a Generic "Processor" to Describe
         a Common Business Practice ..................................................................................... 8

         b.  Case Law of this Court and the Federal Circuit Confirm That the '221 Patent's
         Claims Are Directed to an Abstract Idea .................................................................. 10

      2.  *Alice* Step Two: The Recited Limitations Do Not Transform the Claims into
      Significantly More than the Abstract Idea ..................................................................... 12

         a.  Each Recited Step of the Claims Merely Describes a Component of an Abstract
         Abstract Idea............................................................................................................. 13

         b.  The '221 Patent Claims and Relies on Generic Computers Used in Conventional
         Ways.......................................................................................................................... 13

      3.  Rothschild's Conclusory Statements in the FAC Do Not Remedy the Claims'
      Ineligibility ................................................................................................................... 16

      4.  Claim 7 is Representative of the '221 Patent's Claims .................................................. 17

   C.  Asserted Claim 7 Is Facially Invalid as Indefinite Because It Is an Impermissible
   Mixed Method/System Claim .......................................................................................... 17

   D.  The FAC Fails to Plead a Plausible Claim for Patent Infringement ................................ 19

III.  Conclusion .......................................................................................................................20

## TABLE OF AUTHORITIES

**PAGE(s)**

**CASES**

*360Heros, Inc. v. GoPro, Inc.,*
No. 17-1302-LPS-CJB, 2020 U.S. Dist. LEXIS 90287 (D. Del. May 22, 2020) .................... 18

*Affinity Labs of Texas, LLC v. Amazon.com Inc.,*
838 F.3d 1266 (Fed. Cir. 2016) ................................................................................. 10, 13

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
838 F.3d 1253 (Fed. Cir. 2016) ............................................................................................ 7

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
797 F.3d 1020 (Fed. Cir. 2015) .......................................................................................... 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)................................................................................................... 4, 7, 12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................................. 5

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018) ............................................................................................ 7

*In re Bill of Lading Transm'n & Proces. Sys. Patent Litig.,*
681 F.3d 1323 (Fed. Cir. 2012) .......................................................................................... 19

*Blackbird Tech v. Uber Technologies, LLC,*
No. 19-561 (MN), 2020 U.S. Dist. LEXIS 1310 (D. Del. Jan. 6, 2020) ................................ 18

*Blue Spike LLC v. Comcast Cable Comm'ns, LLC,*
No. 19-159-LPS-CJB, 2019 U.S. Dist. LEXIS 152005 (D. Del. Sept. 6, 2019) ............. 5, 6, 20

*British Telecomms. PLC v. IAC/InterActiveCorp,*
381 F. Supp. 3d 293 (D. Del. 2019)................................................................................... 7, 9

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019) .............................................................................................. 8

*Citrix Sys., Inc. v. Avi Networks, Inc.,*
363 F. Supp. 3d 511 (D. Del. 2019)............................................................................ 7, 13, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014) .......................................................................................... 12

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ................................................................. 13

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    371 F. Supp. 3d 668 (N.D. Cal. 2019) ...................................................... 16

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
    No. 2019-1587, 2020 U.S. App. LEXIS 15423 (Fed. Cir. May 14, 2020) ............................ 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................... 13, 17

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006) ................................................................. 17

*Epic IP LLC v. Backblaze, Inc.*,
    351 F. Supp. 3d 733 (D. Del. 2018) ........................................................... 20

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    No. 2018-2003, 2020 WL 1856498 (Fed. Cir. Apr. 14, 2020) ................................. 11

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ..................................................................... 5

*Grecia v. Bank of New York Mellon Corp.*,
    No. 19-CV-2810 (VEC), 2020 WL 1979276 (S.D.N.Y. Apr. 24, 2020) ................................. 11

*Intellectual Ventures I LLC v. Symantec Corp.*,
    34 F. Supp. 3d 601 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018) ........................ 12

*InterDigital Comm'ns, Inc. v. ZTE Corp.*,
    No. 13-9-RGA, 2014 WL 1620733 (D. Del. Apr. 22, 2014) ................................. 18

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ................................................................. 7

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) ................................................................. 18

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
    173 F. Supp. 3d 717 (N.D. Ill. 2016) ........................................................... 7

*Maxon, LLC v. Funai Corp.*,
    726 F. App'x 797 (Fed. Cir. 2018) ........................................................... 14

*Modern Telecom Sys., LLC v. TCL Corp.*,
    No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ................................. 6, 20

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ................................................................................................ 7, 8

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    No. 16-cv-06371-BLF, 2018 WL5603631 (N.D. Cal. Oct. 26, 2018) .................................. 18

*Prism Techs LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ............................................................................ 10

*RainDance Techs., Inc. v. 10X Genomics, Inc.*,
    No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ...................................... 5, 6, 20

*Rembrandt Data Techs., LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011) .............................................................................. 8, 18

*Rothschild Broad. Distrib. Sys., LLC v. VUDU, Inc.*,
    No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed Mar. 19, 2015) ......................................... 9

*Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*,
    No. 3:19-CV-02659-JD, 2020 WL 1307016 (N.D. Cal. Mar. 19, 2020) .............................. 16

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ................................................................................... 6

*Smartflash LLC v. Apple Inc.*,
    680 F. App'x 977 (Fed. Cir. 2017) .............................................................................. 11

*In re TLI Comm'ns LLC Patent Litig.*,
    87 F. Supp. 3d 773 (E.D. Va. 2015), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016) ............................. 8

*TrackTime, LLC v. Amazon.com, Inc.*,
    No. 18-1518-MN, 2019 WL 2524779 (D. Del. June 19, 2019) ......................................... 16

*TriPlay, Inc. v. WhatsApp Inc.*,
    No. CV 13-1703-LPS-CJB, 2018 WL 1479027 (D. Del. Mar. 27, 2018), *aff'd*, 771 F.
    App'x 492 (Fed. Cir. 2019) ...................................................................................... 15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ................................................................................. 10

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................... 6, 13

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
    No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015) ................................... 14

*Voit Techs., LLC v. Del-Ton, Inc.*,
    757 F. App'x 1000 (Fed. Cir. 2019) ........................................................................... 14

*WhitServe LLC v. Donuts Inc.*,
   390 F. Supp. 3d 571 (D. Del. 2019), *aff'd*, Nos. 2019-2240, 2019-2241, 2020 U.S.
   App. LEXIS 11396 (Fed. Cir. Apr. 10, 2020) ............................................................................ 6

## STATUTES & RULES

35 U.S.C. § 101 ...................................................................................................*passim*

35 U.S.C. § 112 ...................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 5, 6

Defendant Project Panther US, LLC hereby moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the First Amended Complaint ("FAC") (D.I. 9) filed by Plaintiff Rothschild Broadcast Distribution Sys., LLC ("Rothschild") for failure to state a claim upon which relief can be granted.

## I.   INTRODUCTION

### A.   Statement of Facts

Rothschild is asserting U.S. Patent No. 8,856,221 ("the '221 patent") (D.I. 9 Ex. A) and accuses Defendant, which provides a "music streaming platform" under the name TIDAL ("TIDAL"), of allegedly "practic[ing] a method of storing (e.g., cloud storage) media content (e.g. and recorded music) and delivering requested media content to a consumer device." D.I. 9 ¶ 25.

TIDAL moved to dismiss Rothschild's Complaint on May 20, 2020, and Rothschild responded on June 3, 2020 by filing the FAC. The FAC includes a few screenshots from the TIDAL website, but does not indicate Rothschild operated or evaluated the TIDAL system. D.I. 9. Without pointing to any particular configuration, feature, or functionality, the FAC parrots the patent claim language by alleging that the accused product "necessarily includes a receiver configured to receive a request message including data indicating requested media content (e.g., the Product must have infrastructure to receive a request to store recorded media content or to stream recorded media content on a smartphone; additionally, the request message must contain data that identifies the content to be stored or streamed)." *Id.* at ¶ 26. Rothschild also alleges the accused system receives a message including data specifying the length of time to store media content only referencing the renewable subscription plan for TIDAL's customers. *Id.* at ¶ 31.

### B.   The '221 Patent

The '221 patent relates generally to the field of "on-demand storage and delivery of media content." '221 patent, col. 1, lines 26-27. The patent's background section identifies two possible

concerns about streaming services, both of which are not technological in nature. First, the specification notes that some on-demand streaming service plans charge a single flat-rate monthly subscription fee, regardless of whether a consumer watches many videos or just a few per month, while some others charge a "set fee for streaming a specific episode of a television program" regardless of the length of the show. *Id.* at col. 1, lines 47-66. The patent also identifies a possible scenario where consumers using a streaming service may request a video that is not yet available, but then may lose interest in watching the video by the time that the service begins hosting that video for steaming. *Id.* at col. 2, lines 3-12. The specification concludes that "[t]here is a need in the art for an on-demand media storage and streaming system that tailors cost to each consumer based on the requested media content and each consumer's needs." *Id.* at col. 2, lines 13-16.

The summary of the invention section of the '221 patent specification describes the "present invention" as "advantageously provid[ing] a method and system for on-demand storage and delivery of media content." *Id.* at col. 2, lines 20-22. The patent discloses a "storage and streaming system" that includes one or more "consumer devices" and a "network" of servers that can be in a "cloud-computing environment." *Id.* at col. 3, lines 43-55. According to the patent, the "consumer device 12" may communicate with "network 18 using communication protocols known in the art" and may include a processor "for executing computer program instructions stored in memory 26, as is well known in the art." *Id.* at col. 3, lines 47-52 & lines 66-67. A "broadcast server" may store "media content existence" information that "may indicate whether the media content exist[s], e.g., media content [is] not found because user input the wrong movie title." *Id.* at col. 4, lines 23-41. A "remote server" may store media content "for a specific length of time." *Id.* at col. 4, lines 42-55. The patent also describes that a consumer's "cost amount" for using the on-demand system can be based on the "amount of playback time corresponding to the media

content" (i.e., how long the video is) or "the length of time the consumer wants to store the requested content." *Id.* at col. 8, lines 20-25.

The specification of the '221 patent describes the consumer device and servers as including conventional, generic components, i.e., processor, transmitters, receivers, and memory. The patent describes no specific configuration for the servers and, in fact, provides no information at all aside from high-level, generic functionality of the components. *See id.* at col. 10, lines 12-27).

The '221 patent includes 13 claims. The FAC explicitly asserts infringement of only one claim, independent claim 7, which recites:

> A method for storing media content and delivering requested media content to a consumer device, the method comprising:
> receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device;
> determining whether the consumer device identifier corresponds to a registered consumer device; and
> if it is determined that the consumer device identifier corresponds to the registered consumer device, then: determining, whether the request message is one of a storage request message and a content request message; and
> if the request message is the storage request message, then determining whether the requested media content is available for storage; and
> if the request message is the content request message, then initiating delivery of the requested media content to the consumer device; wherein the media data includes time data that indicates a length of time to store the requested media content; and
> the first processor is further configured to determine whether the requested media content exists and
> if the processor determines that the requested' media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.

*Id.* at col. 11, line 43 to col. 12, line 24. Notably, neither claim 7 nor any other claim is specifically directed to "streaming services," as discussed in the background section of the specification, particularly with respect to a consumer's being charged the same amount regardless of the duration of a video or a consumer's losing interest waiting for a video to be made available.

Claim 7 recites a "method" that includes "receiving a requested message including media data indicating requested media content ... **wherein the media data includes time data that indicates a length of time to store the requested media content**" (emphasis added). According to the patent specification, the consumer specifies the length of time for storing the requested media content. '221 patent, col. 7, line 64 to col. 8, line 3.

### C.      Summary of the Argument

First, the '221 patent is invalid under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), and its progeny. The patent claims are directed to an abstract idea, namely enabling subscribers to request available media content or have it stored for a specified period of time. The claims of the '221 patent are similar to claims in numerous other patents that have been held patent-ineligible by the Federal Circuit and this Court. Indeed, the '221 patent itself includes an admission that the purported invention is based on generic and conventional computing techniques and components. The claim limitations add nothing that transforms the claims into significantly more than the abstract idea to which they are directed. Significantly, Rothschild makes no plausible allegations that the claims of the '221 patent are directed to an improvement on computer and communications technology. The improper conclusory arguments that Rothschild added in the FAC do not change that the '221 patent claims are directed to ineligible subject matter.

Second, asserted claim 7, which recites both structural system elements and method steps for using the system, is facially invalid for violating the well-established rule that mixing statutory classes within a claim renders it indefinite under 35 U.S.C. § 112 ¶ 2.

Third, the allegations of Rothschild's FAC are insufficient to plead a plausible claim for patent infringement regarding the TIDAL system. The FAC fails to plead sufficient facts to assert that the claim limitation of "indicat[ing] a length of time to store" media content is met by the

4

accused TIDAL system. It is not plausible that the cited monthly subscription feature corresponds to the required claim element of the customer's indicating a length of time to store media content.

## II.   ARGUMENT

### A.   Legal Standards

The standard of review is the two-part analysis applicable to motions made pursuant to Fed. R. Civ. P. 12(b)(6). *See Blue Spike LLC v. Comcast Cable Comm'ns, LLC*, No. 19-159-LPS-CJB, 2019 U.S. Dist. LEXIS 152005, at *2 (D. Del. Sept. 6, 2019); *RainDance Techs., Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the Court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

With regard to an allegation of direct infringement, a plaintiff needs to have pleaded facts that plausibly indicate that an accused instrumentality practices each of the limitations asserted in

the relevant claims. *See Blue Spike*, 2019 U.S. Dist. LEXIS 152005, at *3; *RainDance Techs.*, 2016 WL 927143, at *2-3. If, after reading a complaint, the Court cannot conclude that it is plausible that the accused infringer's product reads on a limitation of an asserted claim of a patent-in-suit, then it cannot be plausible that the accused infringer actually infringes that patent claim. *Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017) (citing cases).

Patent eligibility is a question of law that may be resolved on the pleadings. As the Federal Circuit explained, patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019), *aff'd*, Nos. 2019-2240, 2019-2241, 2020 U.S. App. LEXIS 11396 (Fed. Cir. Apr. 10, 2020) (noting it is "well-settled" to determine patent eligibility at motion to dismiss stage and collecting cases).

Moreover, it is appropriate for a court to resolve patent eligibility before claim construction. As the Federal Circuit explained, "addressing section 101 at the outset of litigation will have a number of salutary effects," including conserving judicial resources and exposing "basic deficiencies" in a complaint before the parties expend excess time and money. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (internal quotation marks omitted). When, as here, the claims "disclose[] no more than an abstract idea garnished with accessories and there [i]s no reasonable construction that would bring [them] within the patentable subject matter," a court should resolve patent eligibility before claim construction. *Id.* at 719 (internal quotation marks omitted). Further, when it is clear even without claim construction that a patent does not contain details about how computer components are "'manipulated' or otherwise programmed to yield results . . . no formal

claim construction is required." *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 725 (N.D. Ill. 2016).

To evaluate patent eligibility, a court first must determine whether a claim is "directed to" a patent-ineligible concept, such as an abstract idea ("step one"). *Alice*, 573 U.S. at 217; *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). For example, a claim is abstract when the language "is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved." *British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 305 (D. Del. 2019). If the claim is directed to a patent-ineligible concept, the court then must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" that is significantly more than a claim to the abstract idea ("step two"). *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). This second step is satisfied when the elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018). An abstract idea itself, "no matter how beneficial," cannot serve as the inventive concept for step two. *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 523 (D. Del. 2019).

35 U.S.C. § 112 requires a patent applicant to "particularly point out and distinctly claim the subject matter" regarded as the applicant's invention. A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*,

572 U.S. 898, 910 (2014). The Court can determine that a patent claim is invalid as indefinite at the motion to dismiss stage. *In re TLI Comm'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 804-05 (E.D. Va. 2015), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016). Further, the Court cannot correct this ground of invalidity. *See Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1340 (Fed. Cir. 2011) ("[C]ourts may not redraft claims, whether to make them operable or to sustain their validity.") (quoting *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004)).

### B.       The '221 Patent Claims Are Invalid Under § 101 as a Matter of Law

The claims of the '221 patent are directed to the abstract idea of enabling subscribers to request available media content or have it stored for a specified period of time. The recited limitations do not recite anything unconventional that would amount to significantly more than the abstract idea itself. The specification confirms that the "invention" is directed to purely functional limitations, namely applying an abstract concept to a generic computer network.

#### 1.       *Alice* Step One: The '221 Patent Claims Are Directed to the Abstract Idea of Requesting to Receive or Store Media Content

The Court's inquiry under 35 U.S.C. § 101 begins by "looking at the 'focus' of the claims, their 'character as a whole," to assess whether they are directed to an abstract idea. *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). For this step, "the specification must always yield to the claim language" when identifying "the true focus of a claim." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

##### a.       The Claims Recite Functional Language and a Generic "Processor" to Describe a Common Business Practice

As set forth in its preamble, claim 7 is directed to "[a] method for storing media content and delivering requested media content to a consumer device." '221 patent, col. 11, lines 43-44. The summary of the invention characterizes "[t]he present invention" as "a method and system for

8

on-demand storage and delivery of media content." *Id.* at col. 2, lines 20-22. This is the focus of the claimed advance over the prior art and is based on the claims' character as a whole.

The recited method of claim 7 involves the following steps: (a) receiving messages from consumers requesting content; (b) determining whether the consumer is using a registered consumer device; (c) determining whether the consumer has sent a request for immediate delivery or for storage; (d) if the consumer is registered and is requesting to receive content, delivering the content if it is available and not restricted; and (e) if the consumer is registered and is requesting to have content stored, storing the content if it is available, for an amount of time specified by the consumer. *Id.* at col. 11, line 43 to col. 12, line 24. Thus, the claim recites generic, functional outcomes such as "receiving," "determining," "delivering," and "storing," but does not describe how to carry out these functions in a non-abstract way. None of these generically recited functions can be considered in improvement on computer and communications technology. The claim recites that if the consumer is authorized and the content is available, then the consumer can receive it or have it stored. Courts have rejected such functional claiming under § 101. *See British Telecomms.*, 381 F. Supp. 3d at 305-07.

The claims of the '221 patent recite that steps are performed by a generic "processor," but a human user easily could perform the same functions. *See, e.g.*, '221 patent, col. 2, lines 25-33. To illustrate this point, in Rothschild's prior litigation over the same patent, the defendants created a chart comparing the claims of the '221 patent to steps that a video store clerk performed when customers rented videos from the store. *See* Ex. A, Memorandum in Support of Motion to Dismiss in *Rothschild Broad. Distrib. Sys., LLC v. VUDU, Inc.*, No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed Mar. 19, 2015), at 14-15. Each step or function of the claims of the '221 patent directly corresponds to a longstanding business practice, which is performed on a generic "processor." *See*

9

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com*, *LLC*, No. 2019-1587, 2020 U.S. App. LEXIS 15423, at *6 (Fed. Cir. May 14, 2020) ("Claims . . . directed to longstanding commercial practices do not pass step one of the two-part § 101 test.").

> **b.      Case Law of this Court and the Federal Circuit Confirm That the '221 Patent's Claims Are Directed to an Abstract Idea**

Although inventions directed to improving *how to stream* media may be technological in nature, claims directed simply to *when to authorize media streaming* have been found to be patent ineligible as abstract. For example, in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016), the claim was "directed to a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface." *Id.* at 1268. Finding the claim abstract, the Federal Circuit determined that the patent disclosed no particular mechanism for wireless streaming to a handheld device and that "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* at 1269. Likewise, the claims of the '221 patent recite functional steps for storing and delivering media content, but does not recite any "concrete embodiment" of that idea. *Id.* The '221 patent generically describes computer components that receive and parse requests for delivery or storage of media content. *See also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claim recited "converting," "routing," "controlling," "monitoring," and "accumulating records," but failed to "sufficiently describe how to achieve these results in a non-abstract way.").

Courts also have found that claims directed to making content only selectively accessible to subscribers over a network are abstract. In *Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017), the Federal Circuit found claims to be abstract that were directed

to a process of "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." *Id.* at 1017. The Federal Circuit recently held that a telecommunications patent claiming "a system for controlling access to a platform," namely by "controlling access by receiving a request and then determining if the request should be granted" was patent-ineligible, "bare abstract idea." *Ericsson Inc. v. TCL Comm'n Tech. Holdings Ltd.*, No. 2018-2003, 2020 WL 1856498, at *5-6 (Fed. Cir. Apr. 14, 2020); *see also Grecia v. Bank of New York Mellon Corp.*, No. 19-CV-2810 (VEC), 2020 WL 1979276, at *1, 5 (S.D.N.Y. Apr. 24, 2020) (determining that a patent for digital rights management was directed to the abstract idea of storing information about permission and identity for processing access requests); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 984 (Fed. Cir. 2017) ("In sum, the asserted claims are all directed to the abstract idea of conditioning and controlling access to data based on payment, and fail to recite any inventive concepts sufficient to transform the abstract idea into a patent-eligible invention.").

Similar to the patents at issue in *Prism Technologies*, *Ericsson*, *Grecia*, and *Smartflash*, the '221 patent teaches and claims selective access to media content. '221 patent, col. 12, lines 1-2 & 18-22 ("determining whether the consumer device identifier corresponds to a registered consumer device" and determining "whether there are restrictions associated with the requested media content"). The specification reinforces the patent's focus on selective access, in which subscribers to an on-demand video service are allowed to access media content while non-subscribers are not. *Id.* at col. 5, lines 8-10 ("Remote server 16 determines whether the request message is received from a registered user"). Thus, claims directed to controlling access to online resources are abstract.

In addition, courts have found that claims pertaining to storing or backing up data are

11

abstract. *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 607 (D. Del. 2017) (patent directed to backing up data is invalid because "institutions have long backed up data in general" and patent did not improve computer technology itself but merely "rel[ied] on the ordinary storage and transmission capabilities of computers within a network and appl[ied] that ordinary functionality in the particular context of remote mirroring."). *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions."

The title indicates that the '221 patent is directed to "storing broadcast content in a cloud-based computing environment." '221 patent, col. 1, lines 1-3. The claim limitations relating to storage are basic and broad. The claim elements include determining whether a given request is a storage request and, if so, determining whether the content is available for storage. *Id.* at col. 12, lines 5-10. The added limitation of "a length of time to store the requested media content" does not render the idea any less abstract. *Id.* at col. 12, lines 14-15. Patent claims directed to storing data are abstract, even when performed within computer networks and limited to a "particular context." *Symantec*, 234 F. Supp. 3d at 607.

The '221 patent does not relate to any improvement in computer *functionality*. The claims simply provide for selective access to content for subscribers or give subscribers the option to store content for a specified amount of time, and thus are directed to a patent-ineligible abstract idea.

## 2. *Alice* Step Two: The Recited Limitations Do Not Transform the Claims into Significantly More than the Abstract Idea

As the claims are directed to an abstract idea, they are invalid unless they are found to embody an "inventive concept" that is "significantly more" than the abstract idea, under "step two." *Alice*, 573 U.S. at 217-18. The claims of the '221 patent are not significantly more than an

abstract idea. The purported "invention" is claimed through routine, functional steps that do not improve how a computer functions. The patentee acknowledges that the claimed "media content system" is generic, comprising any network of servers implemented in hardware and/or software. Thus, the claims do not amount to significantly more than the abstract idea itself.

        a.        **Each Recited Step of the Claims Merely Describes a Component of an Abstract Idea**

Whether considered individually or collectively, the recited steps of the claims of the '221 patent do not "do significantly more than simply describe [the] abstract method." *Ultramercial*, 772 F.3d at 715. The steps of "receiving" a request, "determining" whether the subscriber is registered, and "determining" whether the identified media content is available and permitted to be delivered or stored, merely follow the abstract idea itself. *See Citrix*, 363 F. Supp. 3d at 523 (holding that the abstract idea itself cannot serve as the inventive concept). To enable subscribers to request available media content or have it stored for a specified period of time, the system would need to perform steps to check if the request were from an authorized subscriber and whether the media content were available; running checks against information stored in a database is a well-known and routine computer function. Moreover, the concept of accessing a network using a consumer device to request and receive information is not inventive. *See Affinity Labs*, 838 F.3d at 1271-72. The limitation of storing content for a requested "length of time" is nothing more than the abstract concept itself.

        b.        **The '221 Patent Claims and Relies on Generic Computers Used in Conventional Ways**

In the context of computer-implemented inventions, there is no inventive concept when "[n]othing in the claims, understood in light of the specification, requires anything other than [an] off-the-shelf, conventional [processor networked with generic computers]." *Elec. Power Grp.*, 830 F.3d at 1355; *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed.

13

Cir. 2020) (holding that "already-available computers" will not save a claim under *Alice* step two); *Voit Techs., LLC v. Del-Ton, Inc.*, 757 F. App'x 1000, 1003 (Fed. Cir. 2019) ("When claims . . . are 'directed to an abstract idea' and 'merely requir[e] generic computer implementation,' they 'do[] not move into [§] 101 eligibility territory.'") (citations omitted); *Maxon, LLC v. Funai Corp.*, 726 F. App'x 797 (Fed. Cir. 2018) (claimed invention directed to "electronic means of increasing user control over subscription entertainment content" fails *Alice* step two because it "does not recite anything beyond the application of routine and conventional computer components."). The '221 patent fails to claim patentable subject matter for this reason as well.

This Court has repeatedly invalidated patents that claim patent-ineligible subject matter and that purport to apply broadly to various computers, over varied networks, and across disparate fields of technology. For example, in the *Citrix* case, this Court found that the patent disclosed that the invention could operate on "any such network or network topology as known to those ordinarily skilled in the art" and included an application "which can be any type and/or form of software," concluding that the claims included only conventional elements. 363 F. Supp. 3d at 514. The Court recognized that by touting the general applicability of the invention, the patent specification undermined the patentee's argument that it was solving "computer-centric problems with computer-centric solutions." *Id.* In another case before this Court, the patent disclosed that "the invention is neither limited by the types of computers used as servers, nor the operating systems, web server or database server application software running on such servers," and the Court concluded that the patent claims contained no inventive concept, only generic hardware and software. *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *9 (D. Del. Sept. 30, 2015). In a third case, the Court cited to the specification's language that "[t]hose versed in the art will readily appreciate that the invention is . . . applicable to any network architecture facilitating

messaging between communication devices" as evidence of the ineligibility of the patent's subject matter. *TriPlay, Inc. v. WhatsApp Inc.*, No. CV 13-1703-LPS-CJB, 2018 WL 1479027, at *8 (D. Del. Mar. 27, 2018), *aff'd*, 771 F. App'x 492 (Fed. Cir. 2019).

The language in the '221 patent closely resembles the broad language found in the patents claiming ineligible subject matter referenced above. The patent states that "[t]he present invention can be realized in hardware, software, or a combination of hardware and software" and that "[a]ny kind of computing system, or other apparatus . . . is suited to perform the functions described herein." '221 patent, col. 10, lines 12-15. The specification of the patent further explains that the computer may be a specialized or general purpose computer, or that the invention could be embedded in a "computer program product." *Id.* at col. 10, lines 17-23. The "computer" and "computer program" may be included in devices such as "mobile phones, personal digital assistant devices, personal computers, . . . digital video recorders, televisions, digital versatile disc players, among other devices that may communicate via network." *Id.* at col. 3, lines 56-60. Significantly, the patent repeatedly acknowledges that the claimed components function in conventional ways. *See, e.g.*, *id.* at col. 3, lines 61-62 ("Consumer device 12 may communicate with network 18 using communication protocols known in the art."); *id.* at col. 3, lines 65-67 ("Processor 24 may include a central processing unit (CPU) for executing computer program instructions stored in memory 26, as is well known in the art."). This expansive language describing implementation of the claimed "invention," which encompasses hardware, software, and *any* computing systems, confirms that the claims of the '221 patent recite only conventional elements.

Nothing claimed or disclosed in the '221 patent transforms the abstract idea, to which the patent claims are directed, into patent-eligible subject matter. Therefore, the claims of the '221 patent are invalid, and the Court should dismiss Rothschild's FAC for failure to state a claim.

### 3. Rothschild's Conclusory Statements in the FAC Do Not Remedy the Claims' Ineligibility

The FAC adds seven paragraphs (D.I. 9 ¶¶ 15-21), which largely repeat the Background and Summary of the Invention sections and assert *legal conclusions*. These new allegations do not remedy the ineligibility of the claims, and Rothschild's pronouncements that the patent claims are "rooted in technology" and "not conventional" do not make them so. Generic statements such as "the software is tailored to provide functionality to perform recited steps and the processor configured (and/or programmed) to provide functionality recited throughout the claims (*id*. at ¶ 21) and the patent "solves problems with the art that are rooted in computer technology and that are associated with electronic transmission, loading, and storage of location information, as well as automatic provisioning of root guidance" (*id*. at ¶ 22) are not substantiated, plausible allegations that support a claim that the '221 patent is not ineligible. Further, Rothschild does not plausibly allege that the claims are not abstract or recite non-conventional features merely by amending its pleadings to parrot language from Federal Circuit opinions applying § 101. *See TrackTime, LLC v. Amazon.com, Inc*., No. 18-1518-MN, 2019 WL 2524779, at *4-5 (D. Del. June 19, 2019); *Dropbox, Inc. v. Synchronoss Techs., Inc*., 371 F. Supp. 3d 668, 693–94 (N.D. Cal. 2019) (dismissing a complaint because its allegations about how a claim is an advancement over the prior art did not create a factual dispute); *Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc*., No. 3:19-CV-02659-JD, 2020 WL 1307016, at *2 (N.D. Cal. Mar. 19, 2020) ("[A] patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized factual allegations."). Moreover, even if the '221 patent "solves problems with then-existing media delivery systems," that does not make the subject matter patent eligible. **The idea of a streaming service is not inventive, and Rothschild has made no *plausible* allegations that its patent for streaming media requires computer components and software operating in a non-generic**

16

**manner.** Rothschild's exaggerated claim that its patent involves an improvement in computer functionality and communication technology is not supported by recited claim elements such as requesting available media content and storing it for a specified period of time.

### 4. Claim 7 is Representative of the '221 Patent's Claims

In assessing invalidity for lack of patentable subject matter under 35 U.S.C. § 101, a court may evaluate a representative claim of the patent rather than reviewing each claim or each asserted claim. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1352. Independent claim 7 is the only claim identified in the FAC as allegedly infringed; nevertheless, the remaining claims are also invalid for lack of patentable subject matter. Claim 1, the only other independent claim of the '221 patent, is a system claim that recites structural components, i.e., server and processor, that are configured to perform all of the same functions stated in independent claim 7. The claims depending from independent claim 7 (and independent claim 1) are directed to corresponding abstract ideas and add only insubstantial limitations. All of the dependent claims are abstract, similar to claim 7, because they either pertain to the same concepts already addressed in claim 7 or otherwise add generic concepts and functions.

### C. Asserted Claim 7 Is Facially Invalid as Indefinite Because It Is an Impermissible Mixed Method/System Claim

Claim 7 includes *method steps*, such as "*determining* whether the consumer device identifier corresponds to a registered consumer device." The claim also includes *structural system elements*, namely, "the first *processor* is further configured to determine whether the requested media content exists."[1] Claim 7 is facially invalid as indefinite under 35 U.S.C. § 112 because it is an impermissible mixed method/system claim. The law is clear that "reciting both an apparatus

---

[1] Claim 7 is also invalid as indefinite because there is no antecedent basis for the "first processor" structural claim element. *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006) (claim is indefinite if a term does not have proper antecedent basis and is not otherwise present by implication or the meaning is not reasonably ascertainable).

and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2. *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011); *IPXL Holdings, LLC v. Amazon.com, Inc*., 430 F.3d 1377, 1384 (Fed. Cir. 2005); *InterDigital Comm'ns, Inc. v. ZTE Corp*., No. 13-9-RGA, 2014 WL 1620733, at \*5 (D. Del. Apr. 22, 2014); *Power Integrations, Inc. v. ON Semiconductor Corp*., No. 16-cv-06371-BLF, 2018 WL5603631, at \*17-18 (N.D. Cal. Oct. 26, 2018) ("mixed apparatus and method claims make it unclear as to when infringement occurs"). Here, a person of ordinary skill would not understand whether performing the recited steps of the method or providing or making a system with the recited structure would be required to infringe claim 7. The mixed method/system claim structure is especially problematic where, as here, the method steps are "divorced from any recited structure." *Id.* at \*17. The method steps of claim 7 are independent elements, not functional language associated with a structural element.

The defects of claim 7 arise solely from the claim language itself. The Court does not need to engage in claim construction to see that, *with respect to this narrow issue*, claim 7 includes both method steps and structural system elements. *360Heros, Inc. v. GoPro, Inc*., No. 17-1302-LPS-CJB, 2020 U.S. Dist. LEXIS 90287, at \*4 n.1 (D. Del. May 22, 2020) ("[D]efiniteness is a question of law for the court.") (citing *H-W Tech., L.C. v. Overstock.com, Inc*., 758 F.3d 1329 (Fed. Cir. 2014)). Claim 7 is an impermissible mixed claim, and Rothschild cannot plausibly allege otherwise. Further, the present situation is distinguishable from cases such as *Blackbird Tech v. Uber Technologies, LLC*, No. 19-561 (MN), 2020 U.S. Dist. LEXIS 1310 (D. Del. Jan. 6, 2020), where the Court stated that it had to construe the claims because the defendants' indefiniteness arguments were directed, *inter alia*, to *means-plus-function elements* in the asserted claim.

Rothschild's FAC fails to state a claim upon which relief can be granted because the asserted patent claim is facially invalid. Thus the Court should dismiss the FAC with prejudice.

18

### D.     The FAC Fails to Plead a Plausible Claim for Patent Infringement

The Court should also dismiss Rothschild's FAC for failing to state a claim upon which relief can be granted because it does plead sufficient facts to support a plausible claim of infringement—whether direct or indirect infringement[2]—regarding the accused TIDAL system.

Asserted independent claim 7 recites a method that includes "receiving a requested message including media data indicating requested media content … **wherein the media data includes time data that indicates a length of time to store the requested media content**" (emphasis added). According to the patent specification, the consumer specifies the length of time for storing the requested media content, as follows ('221 patent, col. 7, line 64 to col. 8, line 3):

> [a] determination is made as to the length of time the requested content is to be stored in media database 52 (Step S144). The consumer may indicate in the storage request message that the requested media content is to be stored for a particular period of time such as two months, one day, or any other specified period of time.

Thus, the consumer selects how long he or she wants particular media content to be stored.

Rothschild fails to allege in the FAC that the accused TIDAL system receives a message including data specifying the length of time to store media content; there are no factual allegations to suggest that the TIDAL system performs this required function. The only reference to the TIDAL system in the FAC regarding the claim limitation of specifying the length of time to store media content is the renewable subscription plan for TIDAL's customers. D.I. 9 ¶ 31 (alleging that "the user is allowed to store media content for maximum of 30 days as based upon their subscription level"). However, such a renewable subscription plan, which relates to a customer's ability to access the TIDAL system, is irrelevant and not related in any way to the claim

---

[2] "Direct infringement under §271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). To assert a claim of indirect infringement, a plaintiff must allege facts "sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transm'n & Proces. Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012).

requirement of specifying the length of time to store media content.

Nothing in the FAC supports the allegation that customers have the ability to determine the length of time that media content is stored in the TIDAL system. Merely selecting a subscription plan does not in itself permit a user to designate how long he or she wants media content stored on a server in the TIDAL system, nor does it mean that the user sends a request to a server in the TIDAL system to store media content for a specified length of time. Further, nowhere in the FAC does Rothschild even attempt to explain how a monthly renewal subscription for accessing the TIDAL system would correspond to specifying the length of time to store media content on the system. In fact, Rothschild does not allege in the FAC that media content is removed from the TIDAL system if a subscription expires or is not renewed.[3]

The FAC fails to plead sufficient facts plausibly asserting that the claim limitation of indicating a length of time to store media content is met by the accused TIDAL system. *See Blue Spike*, 2019 U.S. Dist. LEXIS 152005, at *3; *RainDance Techs.*, 2016 WL 927143, at *2-3; *Modern Telecom*, 2017 WL 6524526, at *2. It is not plausible that the cited renewable monthly subscription feature of the TIDAL system corresponds to the required claim element of the customer's indicating a length of time to store media content. Having failed to make out a plausible claim for infringement, Rothschild's FAC should be dismissed for failure to state a claim.

## III. CONCLUSION

For the foregoing reasons, TIDAL respectfully requests that the Court dismiss Rothschild's FAC in its entirety with prejudice.[4]

---

[3] There is no limited length of time for which media content, e.g., a music file, is stored in the TIDAL system, and TIDAL's customers send no requests and make no such determinations of the time to store media content.

[4] *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 735 (D. Del. 2018) (dismissing complaint with prejudice due to patent subject-matter ineligibility).

Dated:  June 17, 2020                              Respectfully submitted,

                                                   MORRIS JAMES LLP

                                                        _/s/ Kenneth L. Dorsney_
                                                   Kenneth L. Dorsney (#3726)
                                                   500 Delaware Avenue, Suite 1500
                                                   Wilmington, DE 19801
                                                   Tel: (302) 888-6800
                                                   kdorsney@morrisjames.com


                                                   OF COUNSEL:
                                                   Jeffrey L. Snow
                                                   Brad D. Rose
                                                   Joseph V. Micali
                                                   PRYOR CASHMAN LLP
                                                   7 Times Square
                                                   New York, New York 10036
                                                   Tel: (212) 421-4100

                                                   *Attorneys for Project*
                                                   *Panther US, LLC*

Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |
|---|---|
| ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> VUDU, INC., <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. 6:15-cv-00233-RWS-JDL

**JURY TRIAL DEMANDED**

## <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>
## <u>PURSUANT TO 35 U.S.C. § 101</u>

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................1

II. STATEMENT OF THE ISSUE ...............................................................3

III. BACKGROUND ...................................................................................3

    A. Plaintiff's Complaint ....................................................................3

    B. The '221 Patent ...........................................................................4

IV. Legal Standards ....................................................................................7

V. Argument ............................................................................................10

    A. The '221 Patent Is Not Directed to Patent-Eligible Subject Matter ....10

        1. The '221 Patent Is Directed to an Abstract Idea ...................11

        2. The '221 Patent's Claims Supply No Inventive Step That Would Make Them Patent-Eligible ...............................16

VI. CONCLUSION ...................................................................................19

i

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Auctions, LLC v. eBay Inc.*,
No. 13CV1612 BEN (JLB), 2015 WL 1415265 (S.D. Cal. Mar. 27, 2015)...............11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ...................................................................................... passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................8

*Bancorp Services, LLC v. Sun Life Assur. Co. of Canada*,
687 F.3d 1266 (Fed. Cir. 2012)...............................................................................10

*Bascom Research, LLC v. LinkedIn, Inc.*,
No. 12–cv–06293–SI, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015)...........................11

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)..........................................................................17, 18

*Clear With Computers, LLC v. Altec Indus., Inc.*,
No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ............................ passim

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
21 F. Supp. 3d 758, 761, 765 (E.D. Tex. 2014) .................................................. passim

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014)................................................................................17

*Cuvillier v. Sullivan*,
503 F.3d 397 (5th Cir. 2007) ....................................................................................8

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
558 Fed. App'x 988 (Fed. Cir. 2014)........................................................................18

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011).................................................................................17

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014).................................................................................19

*Essociate v. Clickbooth.com, LLC*,
No. SACV 13–01886–JVS, 2015 WL 1428919 (C.D. Cal. Feb. 11, 2015) ...............11

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Hldgs.*,
No. 1201736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014)..........................10

*Lovelace v. Software Spectrum*,
    78 F.3d 1015 (5th Cir. 1996) ...................................................................................8

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    No. 2:13-CV-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014)................................2

*Messaging Gateway Solutions, LLC v. Amdocs, Inc., et al.*,
    2015 WL 1744343 (N.D. Cal. Dec. 16, 2014) .........................................................19

*Morales v. Square, Inc.*,
    No. 5:13–cv–1092–DAE, 2014 WL 7396568 (W.D. Tex. Dec. 30, 2014) ...............11

*Oip Techs. v. Amazon*,
    No. 2012-1696, 2015 WL 3622181 (Fed. Cir. June 11, 2015) ....................................8

*Open Text S.A. v. Box, Inc.*,
    No. 13–cv–04910–JD, 2015 WL 269036 (N.D. Cal. Jan. 20, 2015) ..........................11

*OpenTV, Inc. v. Apple, Inc.*,
    No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ................11, 16

*Synopsys v. Mentor Graphics Corp.*,
    No. C 12–6467 MMC, 2015 WL 269116 (N.D. Cal. Jan. 20, 2015) ..........................11

*Tenon & Groove, LLC v. Plusgrade S.E.C.*,
    No. 12-1118-GMS-SRF, 2015 WL 1133213 (D. Del. Mar. 11, 2015).......................11

*In re TLI Commc'ns LLC Patent Litig.*,
    MDL No. 1:14md2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015)...........................11

*Ultramercial, LLC v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)........................................................................... passim

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.*,
    18 F. Supp. 3d 831 (E.D. Tex. 2013) ..........................................................................9

## STATUTES

35 U.S.C. § 101............................................................................................ passim

## RULES

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 7, 8, 10

iii

# I.     INTRODUCTION

Defendant VUDU, Inc. moves to dismiss this patent infringement action pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff Rothschild Broadcast Distribution Systems, LLC has failed to state a claim upon which relief can be granted.[1]  Specifically, the claims of the asserted patent, U.S. Patent No. 8,856,221 (the "'221 Patent"), are invalid under 35 U.S.C. § 101 because they are drawn to patent-ineligible subject matter, the abstract idea of storing and delivering media content.

The '221 Patent, entitled "System and Method for Storing Broadcast Content in a Cloud-Based Computing Environment," generally describes a process in which one receives a request for media content (for example, a video), determines whether the video is available, and, if so, delivers it to the person who requested it.  This rote inventory checking, retrieval, and delivery procedure describes nothing beyond an abstract idea and could be performed by any video rental store employee who, at a customer's request, checks whether a particular video is in stock and, if so, provides it to the customer.

This is an everyday process of the retail world, applicable to any business that sells some kind of good, whether tangible or digital.  One receives a request, confirms availability of the product or acquires it, and arranges for delivery.  The '221 Patent's effort to computerize this everyday retail process falls far short of adding an inventive concept that would set any meaningful bounds on the claims.

To police against improper patents, the Supreme Court mandates a two-step

---

[1] VUDU acknowledges that Vimeo filed a Motion to Dismiss on similar grounds.  *See* 6:15-cv-00232, Dkt. No. 10.  VUDU joins in that motion and makes the additional points raised here.

analysis for patent eligibility.[2]  First, a court evaluates whether the patent is drawn merely to an abstract idea.  Second, the court determines if the patent's claims contain any inventive step that takes the patent outside the realm of the abstract.  Patents covering far more sophisticated business methods have been declared invalid by the Supreme Court, the Federal Circuit, and this Court.  *See, e.g.*, *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2352 (2014) (invalidating patent covering abstract idea of computerized settlement intermediation); *Ultramercial, LLC v. Hulu, LLC*, 772 F.3d 709, 711-12 (Fed. Cir. 2014) (invalidating patent covering abstract idea for ad-supported media delivery system); *Clear With Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *1, *4 (E.D. Tex. Mar. 3, 2015) ("*Clear with Computers II*") (Gilstrap, J.) (invalidating patent involving "abstract idea of creating a customized sales proposal for a customer"); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848, at *7, *14 (E.D. Tex. Sept. 3, 2014) (Bryson, J., sitting by designation) (invalidating patent that set forth "the general concept of currency exchange, as applied to loyalty awards"); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 761, 765 (E.D. Tex. 2014) (Davis, J.) ("*Clear with Computers I*")[3] (invalidating patent involving "abstract idea of inventory-based selling").

The '221 Patent's claims are drawn to an abstract idea, and there is no inventive element that can save the patent from invalidity under 35 U.S.C. § 101.  Accordingly, this Court should dismiss Plaintiff's complaint for failure to state a claim.

---

[2] *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (U.S. 2014).

[3] *Clear with Computers I* was decided before *Alice* and *Ultramercial*, but anticipates the analytical framework used in both cases.

2

## II.     STATEMENT OF THE ISSUE

Whether the '221 Patent's claims—for systems and methods for storing and delivering media content—are directed to an abstract idea, fail to contain an inventive step and are therefore, ineligible for a patent under 35 U.S.C. § 101.

## III.    BACKGROUND

### A.     Plaintiff's Complaint

On March 19, 2015, Plaintiff filed its complaint for patent infringement against VUDU.  Separately, Plaintiff filed similar suits in this Court against nine other companies, asserting the same patent.[4]   All ten cases have been assigned to Judge Schroeder.  No case management order has issued in any of the cases.

Plaintiff claims to own or have the right to enforce the '221 Patent.  Compl., Dkt. No. 1 ¶ 7.  Plaintiff asserts the '221 Patent's claims relate to a "'system for media content storage and delivery' comprising a variety of features" and a "'method for storing media content and delivering requested media content to a consumer device.'"  *Id.* ¶¶ 10, 12 (quoting '221 Patent, claims 1 and 7).  Plaintiff further asserts VUDU's systems "are 'a system for media content storage and delivery'" and VUDU "practices a 'method for storing media content and delivering requested media content to a consumer device.'"  *Id.* ¶¶ 11, 13 (quoting '221 Patent, claims 1 and 7).

---

[4] These cases are:  *Rothschild Broadcast Distribution Systems, LLC v. Comcast Corp.*, 6:15-cv-226; *Rothschild Broadcast Distribution Systems, LLC v. Discovery Communications, Inc.*, 6:15-cv-227; *Rothschild Broadcast Distribution Systems, LLC v. NGC Networks US, LLC*, 6:15-cv-228; *Rothschild Broadcast Distribution Systems, LLC v. Univision Communications, Inc.*, 6:15-cv-229; *Rothschild Broadcast Distribution Systems, LLC v. UStream, Inc.*, 6:15-cv-230; *Rothschild Broadcast Distribution Systems, LLC v. VBrick Sys., Inc.*, 6:15-cv-231; *Rothschild Broadcast Distribution Systems, LLC v. Vudu, Inc.*, 6:15-cv-233; *Rothschild Broadcast Distribution Systems, LLC v. Wistia, Inc.*, 6:15-cv-234; and *Rothschild Broadcast Distribution Systems, LLC v. Crunchyroll, Inc.*, 6:15-cv-238.

### B. The '221 Patent

The '221 Patent issued on October 7, 2014 and was initially assigned to its inventor, Leigh M. Rothschild. Compl., Dkt No. 1, ¶ 7. The '221 Patent claims priority to a provisional application filed on August 29, 2011. '221 Patent 1:8-17. The '221 Patent's abstract states that the patent covers "[a] system, method and device for media content storage and delivery," and that the invention relates to the field of "on-demand storage and delivery of media content." *Id*. 1:25-27.

The "background" section of the '221 specification states "[t]he widespread growth of communication networks and internet enabled consumer devices allow consumers to stream on-demand videos and music." *Id*. 1:31-33. The specification continues:

> The on-demand video and music service is typically provided by large companies or second party distributors that store the media content for streaming to the consumer devices. For example, a television company may maintain a television server that stores all television shows that are broadcast by the television company such that the consumer may stream the stored television show on the consumer device. This requires the television company to store all or substantially all the shows broadcast by the television company, which requires a great deal of data storage and often comes at a significant cost to the television company.

*Id*. 1:33-44.

According to the specification, the innovation suggested by the '221 Patent is a system or method by which a broadcaster could store content most frequently requested by consumers on a "broadcast server" while keeping its entire programming catalog on a "remote server" (where, presumably, it costs less to store content). *Id*. 3:47-49. If a consumer requests content that is already on the broadcast server, the system can deliver the content immediately. If the consumer requests content that is only on the remote

server, the system can put the content in a queue for release to the broadcast server for delivery to the consumer. However the issued claims, which control here, are not so limited, and broadly suggest an even more abstract concept—a system "configured to receive a request" for "storage" or "delivery" of "media content" that is "further configure[d] to initiate delivery of the requested media content to the consumer device." *See, e.g.*, *id.* 10:44-67.

The '221 Patent has 13 claims—two of which are independent claims (claims 1 and 7). Both independent claims are directed to the same general idea of, upon a consumer's request, checking to see whether an item of media content is available, and both claims feature nearly identical limitations (as italicized):

| 1. A system for media content storage and delivery, the system comprising: | 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising: |
|---|---|
| a first server, the first server including: | |
| a first receiver, the first receiver configured to *receive a request message including media data indicating requested media content and a consumer device identifier corresponding to a consumer device*; and | *receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device*; |
| a first processor in communication with the first receiver, the first processor configured to *determine whether the consumer device identifier corresponds to a registered consumer device*; | *determining whether the consumer device identifier corresponds to a registered consumer device*; and |
| if the first processor *determines that the consumer device identifier corresponds to the registered consumer device, then:* | if it is *determined that the consumer device identifier corresponds to the registered consumer device, then:* |
| the first processor is further configured to *determine whether the request message is one of a storage request message and a content request message*; | *determining, whether the request message is one of a storage request message and a content request message;* and |
| *if the request message is the storage* | *if the request message is the storage* |

Americas 90588676

| | |
|---|---|
| *request message, then* the processor is further configured to *determine whether the requested media content is available for storage;* and | *request message, then determining whether the requested media content is available for storage;* and |
| *if the request message is the content request message, then,* the processor is further configured to *initiate delivery of the requested media content to the consumer device*; | *if the request message is the content request message, then initiating delivery of the requested media content to the consumer device;* |
| *wherein the media data includes time data that indicates a length of time to store the requested media content; and* | *wherein the media data includes time data that indicates a length of time to store the requested media content; and* |
| *the first processor is further configured to determine whether the requested media content exists; and* | *the first processor is further configured to determine whether the requested media content exists; and* |
| *if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.* | *if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.* |

The 11 dependent claims (claims 2-6, 8-13) add insubstantial limitations to the corresponding independent claims 1 and 7:

- Providing a message confirming that requested media content is available for storage (claims 2, 8).

- Providing a message prompting a user to register a consumer device (claim 3).

- Providing memory to store consumer user data including consumer device data (claims 4, 9).

- Verifying that a consumer device identifier is associated with a particular consumer (claims 5, 11).

- Transmitting requested media content after verifying that a consumer

6

device identifier corresponds to a registered consumer device (claim 6).

- Informing the consumer of the cost of the requested media content (claim 12) and doing the same where the cost does not vary based upon the number of times the content is delivered (claim 13).

The '221 Patent reflects no invention of any new software or hardware.  Instead, the claimed systems and methods operate with well-known computer components.  The patent states the purported invention can be put into practice using "[a]ny kind of computing system," and "[a] typical combination of hardware and software could be a specialized or general purpose computer system."  *Id.* 10:12-19.

A consumer device "may include wired or wireless devices such as mobile phones, personal digital assistant devices, personal computers, laptop computers, tablet computers, digital video recorders, televisions, digital versatile disc players, among other devices that may communicate via network."  *Id.* 3:56-60.  The processors may include a "central processing unit (CPU) for executing computer program instructions stored in memory, as is well known in the art."  *Id.* 3:65-67.  "Memory may include non-volatile and volatile memory."  *Id.* 4:1-3.  Non-volatile memory "may include a hard drive, memory stick, flash memory and the like," and "volatile memory may include random access memory and others known in the art."  *Id.* 3:3-5.  The various items of hardware communicate "via network using communication protocols known in the art, *e.g.*, Internet Protocol."  *Id.* 3:50-52.

## IV.    LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief, including factual allegations that when assumed to be

7

true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  In deciding a Rule 12(b)(6) motion, courts may consider facts alleged in the complaint as well as documents attached to or incorporated into the complaint.  *See Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996).  Although factual allegations are taken as true, this principle "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      Whether a patent is drawn to patentable subject matter is an appropriate issue for a motion to dismiss.  "Failure to recite statutory subject matter is the sort of 'basic deficiency,' that can, ***and should***, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Oip Techs. v. Amazon*, No. 2012-1696, 2015 WL 3622181, at *4 (Fed. Cir. June 11, 2015) (quoting *Twombly*, 550 U.S. at 558) (Mayer, J., concurring) (emphasis added).  "Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents."  *Id*.  Thus, district courts should adhere "to the Supreme Court's instruction that patent eligibility is a 'threshold' issue, by resolving it at the first opportunity."  *Id.* (citing *Bilski v. Kappos*, 561 U.S. 593, 602 (2010)); *see also Ultramercial*, 772 F.3d at 711-12 ("[W]e conclude that the '545 patent does not claim patent-eligible subject matter and accordingly affirm the district court's grant of WildTangent's motion to dismiss."); *Clear with Computers II*, 2015 WL 993392, at *1 (granting Rule 12(b)(6) motion to dismiss based upon patent ineligibility under Section

101); *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, 18 F. Supp. 3d 831, 833 (E.D. Tex. 2013) (same).

The Supreme Court has articulated a two-step framework for determining patentable subject matter. *See Alice*, 134 S. Ct. at 2355. First, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. *Id*. For example in *Alice*, the Court concluded the concept of "intermediated settlement" is a fundamental economic practice that falls "squarely within the realm of 'abstract ideas.'" *Id*. at 2357. Second, if the claims are so directed, the court must then consider "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. at 2350 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (U.S. 2012). This second step searches for an "'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id*. at 2355 (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1294). In other words, "if a patent merely implement[s] an abstract idea on a computer, that addition cannot impart patent eligibility." *Id*. at 2358 (citation, alterations, and internal quotation marks omitted). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 2358. As shown below, the '221 Patent fails both steps of this test.

Moreover, in deciding patentability, a court need not review all claims, but only those that are representative of the claimed invention as a whole. *See Ultramercial*, 772 F.3d at 712 (reviewing only claim 1 as "representative" and noting that "the other claims

9

of the patent are drawn to a similar process" and therefore "suffer from the same infirmity as claim 1 and need not be considered further"). Further, "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Services, LLC v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *see also Ultramercial*, 772 F.3d at 713-14 (noting the "district court granted WildTangent's pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims" and examining patentability "[w]ithout purporting to construe the claims"); *Clear with Computers II*, 2015 WL 993392, at *3 ("[T]he particular facts of this case indicate that claim construction is unnecessary."); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings.*, No. 1201736-LPS-CJB, 2014 WL 4379587, at *1 (D. Del. Sept. 3, 2014) (deciding Section 101 motion prior to claim construction is appropriate where no disputed areas of fact are relevant to motion).

Here, as in *Clear with Computers II*, this Court can invalidate the asserted patent without claim construction because "the claim language is relatively simple." *Clear with Computers II*, 2015 WL 993392, at *3.

## V.    ARGUMENT

### A.    The '221 Patent Is Not Directed to Patent-Eligible Subject Matter

The Supreme Court has strongly signaled that federal courts should root out patents unworthy of the limited monopoly conferred by the patent laws, including so-called business-method patents that purport to cover basic practices in the commercial marketplace. This began with *Bilski*, where the Court held a patent directed to a "method for hedging against the financial risk of price fluctuations" was invalid for claiming an abstract idea—namely the "fundamental economic practice" of hedging. *Alice*, 134 S. Ct.

at 2355-56 (citing *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)).  The patent in this case is directed to an abstract idea and contains no steps sufficient to confer patent eligibility.

### 1.    The '221 Patent Is Directed to an Abstract Idea

District courts, including this Court, have invalidated patents in early stages of litigation, based on this guidance.[5]  In *Clear with Computers I*, the patent claimed a method with the following steps:  "(1) receiving a product query, (2) determining the availability of products and associated options in inventory, (3) preparing a list of available options, and (4) presenting the list."  *Clear with Computers I*, 21 F. Supp. 3d at 765.  Judge Davis found (1) the patent "involves the abstract idea of inventory-based

---

[5] *See, e.g.*, *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) (patent claiming "use of identification codes to organize and transmit confidential information" held drawn to abstract idea); *Advanced Auctions, LLC v. eBay Inc.*, No. 13CV1612 BEN (JLB), 2015 WL 1415265, at *5 (S.D. Cal. Mar. 27, 2015) ("The patent itself describes implementing an existing abstract idea—an auction— refined for implementation on the Internet."); *Tenon & Groove, LLC v. Plusgrade S.E.C.*, No. 12-1118-GMS-SRF, 2015 WL 1133213, at *2 (D. Del. Mar. 11, 2015) ("computer-implemented method for concurrent optimization of value in a transaction between at least two entities" held an abstract idea); *Essociate v. Clickbooth.com, LLC*, No. SACV 13– 01886–JVS (DFMx), 2015 WL 1428919, at *5 (C.D. Cal. Feb. 11, 2015) ("steps for how a merchant can gain access to customers from a referring entity without having to compete with other merchants for those same customers" held merely to describe abstract idea); *In re TLI Commc'ns LLC Patent Litig.*, MDL No. 1:14md2534, 2015 WL 627858, at *8 (E.D. Va. Feb. 6, 2015) ("[T]he '295 patent claims at issue are clearly directed to the abstract idea of taking, organizing, classifying, and storing photographs."); *Open Text S.A. v. Box, Inc.*, No. 13–cv–04910–JD, 2015 WL  269036, at *3 (N.D. Cal. Jan. 20, 2015) ("Shorn of its implementation-specific fleece, the claim is directed at providing a method for people to collaborate and share information without the need for specialized software or expertise."); *Synopsys v. Mentor Graphics Corp.*, No. C 12–6467 MMC, 2015 WL 269116, at *3 (N.D. Cal. Jan. 20, 2015) ("[T]he asserted claims are directed to the process of interference, which is fundamental to IC design and can be performed mentally."); *Bascom Research, LLC v. LinkedIn, Inc.*, No. 12–cv–06293–SI, 2015 WL 149480, at *8 (N.D. Cal. Jan. 5, 2015) (patent described "abstract idea of creating, storing and using relationships between objects"); *Morales v. Square, Inc.*, No. 5:13–cv–1092–DAE, 2014 WL 7396568, at *7 (W.D. Tex. Dec. 30, 2014) ("Claim 6 of the '589 patent encompasses an abstract idea because it describes the fundamental concept of relaying a signal containing the sender's identity.").

selling," and (2) the patent's use of a "computer system with a configuration engine" did not meaningfully limit the claims as the steps "can be performed entirely by a human, mentally or with pencil and paper." *Clear with Computers I*, 21 F. Supp. 3d at 765.

Similarly, in *Clear with Computers II*, the patent claimed a "computer-implemented method to (1) present questions to, and receive answers from, a customer regarding products for sale; (2) based on at least one answer, select a picture of the product, a picture of the product environment, and a textual product description; and (3) put the pictures and text into a single visual output as part of a customized proposal for sale." *Clear with Computers II*, 2015 WL 993392, at *4. Judge Gilstrap found (1) the patent was drawn to the "abstract idea of creating a customized sales proposal for a customer," and (2) the computerization of the patent's steps added nothing because "[t]he steps performed by the claimed computer elements are functional in nature and could easily be performed by a human." *Id.*

The '221 Patent is similar in that it attempts to claim an abstract idea implemented with generic computer components that could easily be done by a person. At its most fundamental level, the patent describes a method and system for storing and delivering media content. Plaintiff itself concedes the abstract nature of the '221 Patent's claims when it alleges the claims are drawn to (1) a "system for media content storage and delivery" and a "method for storing media content and delivering requested media content to a consumer device." Comp., Dkt No. 1, ¶ 12; *see also* '221 Patent, abstract ("A system, method, and device for media content storage and delivery.").

Independent claims 1 and 7, which are representative of the claimed invention, recite the following steps:

- Receiving messages from consumers requesting content;

- Confirming that the consumer is using a registered consumer device;

- Determining whether the consumer has sent a request for immediate delivery or for storage;

- Determining whether the requested content is available for either immediate delivery or storage;

- Checking whether there are restrictions on delivery to the consumer device; and

- Delivering the content if available.

These steps describe, at a high level of generality, a process for receiving a consumer request for an item, reviewing the request to determine whether it contains certain information, and delivering the requested item. This claims nothing more than the ubiquitous business practice of checking one's inventory to see if an item requested by a customer is in stock.[6] None of this is unique to online media; indeed, these familiar practices are integral to every business that sells goods, whether digital or physical.[7] *See, e.g.*, *Clear with Computers I*, 21 F. Supp. 3d at 765 (concept of "selling goods from inventory" is an abstract business idea).

The generic inventory-checking process claimed by Plaintiff is at least as abstract,

---

[6] Similarly, the dependent claims mimic commonplace and common-sense business practices like telling a customer if an item is available or what its price is. *See* '221 patent, claims 2, 8, 12.

[7] It is not necessary at this step to determine whether the patent claims anything that departs from traditional business methods. *See Ultramercial*, 772 F.3d at 715 ("We do not agree with *Ultramercial* that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete. In any event, any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis.").

Americas 90588676

if not more so than claims that have been held invalid in other cases.  *See, e.g.*,

*Ultramercial*, 772 F.3d at 712 (finding abstract and invalidating a patent claiming "a

method for distributing copyrighted media products over the Internet where the consumer

receives a copyrighted media product at no cost in exchange for viewing an advertisement,

and the advertiser pays for the copyrighted content").

Tellingly, in this case, all the steps of the '221 Patent[8] could be performed by a

video rental store clerk:

| Claim 7 Language | As Performed by a Human |
|---|---|
| 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising: | A clerk at a video rental store: |
| receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device; | Accepts requests from customers for videos, wherein the requests contain certain information including the title of the video, how long the customer wants to retain it, at the same time as an identifier for the customer (*e.g.*, the video rental store's membership card).[9] |
| determining whether the consumer device identifier corresponds to a registered consumer device; and | Checks the customer's membership card against a list of approved members without any late fees. |
| if it is determined that the consumer device identifier corresponds to the registered consumer device, then: | If the clerk determines that the customer is on the list of approved members, then the clerk will determine whether the customer is asking for a video that is available for rental now or to back-order a video that isn't on the shelves. |
| determining, whether the request message is one of a storage request | |

---

[8] For simplicity, only the method claim is analyzed here, but the analysis for the corresponding system claim would yield the same result.  Also, the corresponding system claim is linked to and falls with the method claim.  To allow the system claim, while invalidating the method claim, would permit applicants to preempt abstract ideas by the mere use of patent-drafting conventions.  *See Alice*, 134 S. Ct. at 2360 ("This Court has long warn[ed] . . . against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art." (quoting *Mayo*, 132 S. Ct. at 1289) (quotations omitted)).

[9] For the purposes of a Section 101 inquiry, checking to see whether a consumer is using a registered device (as the claim requires) is an idea at the same level of abstraction as checking to see whether a consumer has a membership.

14

| Claim 7 Language | As Performed by a Human |
|---|---|
| message and a content request message; and | |
| if the request message is the storage request message, then determining whether the requested media content is available for storage; and | If the customer wants to back-order a video, the clerk will check a list of videos from the company's warehouse to see if the video can be back-ordered. |
| if the request message is the content request message, then initiating delivery of the requested media content to the consumer device; | If the customer wants a video that is in stock, then the clerk will give the video to the customer for rental. |
| wherein the media data includes time data that indicates a length of time to store the requested media content; and | The clerk is able to receive information from customers about how long they would like the store to stock the video before returning it to the warehouse. |
| the first processor is further configured to determine whether the requested media content exists; and | The clerk checks the shelves of the store and the list of warehoused videos to see if the video rental store has the video anywhere. |
| if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device. | If the clerk sees that the video rental store has the video somewhere, the clerk will determine whether the video is available and whether there are any restrictions on the membership that would preclude the rental of the video to the customer (*e.g.*, no restricted movies for members under 17; no rentals to customers who have not paid late fees). |

That a human being can perform all of the claim limitations confirms that the '221 claims are drawn to an abstract idea. *See, e.g.*, *Clear with Computers I*, 21 F. Supp. 3d at 767 ("[A] store clerk, armed with only a pencil and paper, can receive a question about men's basketball sneakers, determine the options available (color, brand, size, etc.) and the availability of those options in inventory, prepare a list of those available options, and present that list to the customer."); *Clear with Computers II*, 2015 WL 993392, at *4 ("The claims essentially propose that, instead of a human salesman asking customers about their preferences and then creating a brochure from a binder of product pictures and text and using a rolodex to store customer information, a generic computer can perform

those functions."); *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL

1535328, at *4 (N.D. Cal. Apr. 6, 2015) (considering whether claims can be "performed in

the human mind[] or by a human using pen and paper" when determining whether claims

are directed to abstract ideas) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654

F.3d 1366, 1372 (Fed. Cir. 2011)).

Accordingly, the claims of the '221 Patent are directed to an abstract idea—the

idea of storing and delivering media content—and are not patentable.

2. **The '221 Patent's Claims Supply No Inventive Step That Would Make Them Patent-Eligible**

As detailed earlier, the '221 claims are drawn to the abstract idea of storing and

delivering media content—the equivalent of checking to see if a video is available for a

customer. The claim language does not "do significantly more than simply describe that

abstract method." *Ultramercial*, 772 F.3d at 715. The claim elements do not, individually

or in combination, require anything but a general-purpose computer to perform the various

steps and "add nothing of practical significance to the underlying abstract idea." *Id.* at

716.

Individually, each step of the claims of the '221 Patent merely describes a

component of the abstract idea—for example, checking to see if content is available—with

the instruction that the step be performed by a generic computer. But "adding the words

'apply it with a computer' simply combines those two steps, with the same deficient

result." *Alice*, 134 S. Ct. at 2350; *Ultramercial*, 772 F.3d at 715 (claims that "simply

instruct the practitioner to implement the abstract idea with routine, conventional activity"

held invalid).

The '221 Patent's computerized steps—receiving input (receiving the consumer

request for media content), sorting information (determining whether the request is one for media content or media storage), checking information against a list or database (determining whether a consumer device identifier is linked to a registered consumer device), and providing output (delivering requested media content to a consumer)—all describe well-known computer functions. *See Alice*, 134 S. Ct. at 2359 (using a computer to "obtain data, adjust account balances, and issue automated instructions" all involve "well-understood, routine, conventional activities previously known to the industry"); *Ultramercial*, 772 F.3d at 716 ("[R]outine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The computer functionality is generic—indeed, quite limited: a computer receives a request for a guarantee and transmits an offer of guarantee in return."); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[D]etecting the presence of a particular one of said defined set of symbols on a hard copy document" merely described "generic optical character recognition technology."); *CyberSource Corp.*, 654 F.3d at 1370 (holding "mere collection and organization of data" insufficient). Consequently, all of the computer components listed by the '221 claims are "purely functional and generic." *Alice*, 134 S. Ct. at 2360 ("Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims.").[10]

---

[10] The '221 Patent itself confirms that the claimed invention can be realized using *"[a]ny kind* of computing system" and that a "typical" implementation will not require anything more than a "*general purpose* computer system." '221 Patent, 10:12-19 (emphases added). Further, because the '221 claims are "not tied to any particular novel machine or

Nor does the ordered combination of the steps of the '221 Patent add anything because their sequence—"obtaining, separating, and then sending information"— "follow[s] from the underlying idea of categorical information storage [and delivery]." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988, 993 (Fed. Cir. 2014). Indeed, there is no way to logically perform the invention other than in the sequence recited in its claims: one obviously must receive a consumer request for an item before checking to see if it is available, and one must check availability before delivering the item.

Finally, the '221 Patent's purported limitation to online media places no meaningful limitation on its abstract idea. The '221 claims merely invoke the Internet and on-demand media generally to take advantage of "[t]he widespread growth of communication networks and internet enabled consumer devices allow[ing] consumers to stream on-demand videos and music." '221 Patent 1:31-33. Any such attempt to limit the covered systems to a "particular technological environment" is insufficient to confer patentability. *Alice*, 134 S. Ct. at 2350; *Ultramercial*, 772 F.3d at 716 ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility."); *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network— with no further specification—is not even arguably inventive."). Moreover, as the patent itself acknowledges, on-demand streaming via the Internet was widespread long before the patent. *See* '221 Patent 1:31-2:16.

Unlike in *DDR Holdings, LLC v. Hotels.com, L.P.*, the claims at issue here

---

apparatus, [but] only a general purpose computer," they also fail the Federal Circuit's pre-*Alice* machine-or-transformation test. *See Ultramercial*, 772 F.3d at 716. While passing this test is no longer conclusive, failing it confirms that a patent is directed to unpatentable subject matter. *See id.* at 717.

18

"merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). The Federal Circuit cautioned that "not all claims purporting to address Internet-centric challenges are eligible for patent." *Id.* at 1258. As noted in the video store example, the '221 Patent recites the performance of renting a video from a video store, but simply performs it on the internet. The '221 Patent seeks to solve the same problem video stores had already solved prior to the Internet: how to deliver the video to the consumer even when the video is not on site. In *Messaging Gateway*, the Court found that the claims at issue manipulated an interaction between a mobile phone and a computer "in order to achieve a desired result which overrides conventional practice." *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, No. 14-732-RGA, 2015 WL 1744343, at *5 (N.D. Cal. Dec. 16, 2014). In contrast, the claims here merely convert the conventional practice of video store rentals to a digital form involving computers without manipulating the process in any way.

In sum, the '221 Patent's claims add "no meaningful limitations to convert the abstract idea into patent-eligible subject matter." *Ultramercial*, 772 F.3d at 714.

## VI. CONCLUSION

The claims of the asserted '221 Patent are directed to an abstract idea storing and delivering media content, a practice that existed long before computers and the Internet. As such, they are ineligible for patent protection under 35 U.S.C. § 101 and VUDU respectfully requests this Court dismiss Plaintiff's complaint for patent infringement with prejudice.

Dated:   June 12, 2015

Respectfully submitted,

By: */s/  Bijal V. Vakil*

Bijal V. Vakil
CA State Bar No.:192878
(*Admitted to practice in the E.D. Texas*)
bvakil@whitecase.com
**WHITE & CASE LLP**
3000 El Camino Real
Five Palo Alto Square 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

*Attorneys for Defendant*
VUDU, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on June 12, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by First Class U.S. Mail on this same date.

/s/ *Bijal V. Vakil*
Bijal V. Vakil